**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

|  |  |
|---|---|
| KS CAYTON, LLC, | |
| Plaintiff | Civil Action No. 6:15-cv-655-MHS |
| v. | |
| HOBBY LOBBY STORES, INC., | |
| Defendant | |

**FIRST AMENDED MOTION TO DISMISS FOR FAILURE TO STATE A
PLAUSIBLE CLAIM**

Louis T. Pirkey
State Bar No. 16033000
Travis R. Wimberly
State Bar No. 24075292
PIRKEY BARBER PLLC
600 Congress Ave., Suite 2120
Austin, TX 78701
(512) 322-5200
(512) 322-5201 (fax)
lpirkey@pirkeybarber.com
twimberly@pirkeybarber.com

*Attorneys for Defendant Hobby Lobby
Stores, Inc.*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................. ii

STATEMENT OF ISSUE .............................................................................. vi

INTRODUCTION ........................................................................................ 1

FACTS ........................................................................................................ 2

ARGUMENT ............................................................................................... 5

I.      *Twombly* and *Iqbal* require a "plausible" claim for relief. ............................... 6

II.     KS Cayton's claims are not plausible. ............................................................ 7

      A.      The complaint fails to plausibly allege a likelihood of confusion. .......... 7

            1.      The complaint does not plausibly allege—and indeed, negates—that Hobby Lobby used "GET PINSPIRED" as a trademark. ................................................................. 8

            2.      Even setting aside the trademark-use requirement, the complaint gives no plausible reason to believe that consumers would likely be confused. ......................................... 14

      B.      The complaint conclusively establishes a "fair use" defense. ............... 19

III.    KS Cayton has no right to discovery. ............................................................. 22

CONCLUSION ............................................................................................ 23

CERTIFICATE OF SERVICE .................................................................... 24

# TABLE OF AUTHORITIES

## Cases

*Architectural Mailboxes, LLC v. Epoch Design, LLC,*
No. 10cv974,  2011 WL 1630809 (S.D. Cal. Apr. 28, 2011) ........................ 19, 20, 21

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ......................................................................................... *passim*

*Baker v. DeShong,*
--- F. Supp. 3d ----, 2014 WL 8104131 (N.D. Tex. 2014) ......................................... 8

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ......................................................................................... *passim*

*Bell v. Itawamba County School Bd.,*
774 F.3d 280 (5th Cir. 2014) ............................................................................. 2, 12

*Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.,*
815 F.2d 500 (8th Cir. 1987) .................................................................................. 15

*Ceglia v. Zuckerberg,*
No. 10-CV-00569A(F), 2012 WL 503810 (W.D.N.Y. Feb. 14, 2012) ...................... 11

*Dallas Cowboys Football Club, Ltd. v. America's Team Props., Inc.,*
616 F. Supp. 2d 622 (N.D. Tex. 2009)..................................................................... 16

*Dessert Beauty, Inc. v. Fox,*
568 F. Supp. 2d 416 (S.D.N.Y. 2008)...................................................................... 18

*Dow Corning Corp. v. Jie Xiao,*
No. 11-10008-BC, 2011 WL 2015517 (E.D. Mich. May 20, 2011) ............... 9, 13, 19

*Dura Pharms., Inc. v. Broudo,*
544 U.S. 336 (2005) ................................................................................................ 22

*Eastland Music Group, LLC v. Lionsgate Entm't, Inc.,*
707 F.3d 869 (7th Cir. 2013)................................................................... 9, 13, 19, 22

*Elvis Presley Enters., Inc. v. Capece,*
141 F.3d 188 (5th Cir. 1998)........................................................................... *passim*

*Faulkner Literary Rights, LLC v. Sony Pictures Classics Inc.,*
953 F. Supp. 2d 701 (N.D. Miss. 2013).................................................................. 19

*Financial Acquisition Partners LP v. Blackwell,*
440 F.3d 278 (5th Cir. 2006) .................................................................................... 4

*Fjeta v. Facebook, Inc.,*
841 F. Supp. 829 (S.D.N.Y. 2012) .......................................................................... 11

*Fortres Grand Corp. v. Warner Bros. Entm't Inc.,*
947 F. Supp. 2d 922 (N.D. Ind. 2013)..................................................................... 19

*Go Pro Ltd. v. River Graphics, Inc.*,
   No. CIVA01CV600, 2006 WL 898147 (D. Colo. 2006) ............................................ 12

*Greenpoint Financial Corp. v. Sperry & Hutchinson Co.*,
   116 F. Supp. 2d 405 (S.D.N.Y. 2000) ................................................................. 12, 17

*Havel v. Honda Motor Europe Ltd.*,
   No. H-13-1291, 2014 WL 4967229 (S.D. Tex. Sept. 30, 2014) ................................... 2

*Hensley Mfg. v. ProPride, Inc.*,
   579 F.3d 603 (6th Cir. 2009) ......................................................................... *passim*

*Horton v. Vinson*,
   No. 1:14-CV-192, 2015 WL 4774276 (N.D. W. Va. Aug. 12, 2015) ......................... 18

*In re Astro-Gods, Inc.*,
   223 U.S.P.Q. 621, 1984 WL 63582 (T.T.A.B. 1984) .............................................. 12

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
   11 F.3d 1460 (9th Cir. 1993) ............................................................................ 20

*In re F.C.F. Inc.*,
   30 U.S.P.Q.2d 1825, 1994 WL 262248 (T.T.A.B. 1994) ......................................... 12

*Kansa Reinsurance Co., Ltd. v. Cong. Mortg. Corp. of Tex.*,
   20 F.3d 1362 (5th Cir. 1994) ........................................................................ 20, 22

*Kelly-Brown v. Winfrey*,
   717 F.3d 295 (2d Cir. 2013) ............................................................................ 13

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
   543 U.S. 111 (2004) ........................................................................................ 20

*Louis Vuitton Malletier S.A. v. Sunny Merchandise Corp.*,
   --- F. Supp. 3d ----, 2015 WL 1499449 (S.D.N.Y. 2015) ......................................... 12

*Louis Vuitton Malletier S.A. v. Warner Bros. Entm't*,
   868 F. Supp. 2d 172 (S.D.N.Y. 2012) ................................................................. 19

*Marvel Enters., Inc. v. NCSoft Corp.*,
   No. CV 04-9253, 2005 WL 878090 (C.D. Cal. Mar. 9, 2005) ................................... 19

*McLean v. Fleming*,
   96 U.S. 245 (1877) ......................................................................................... 15

*MCW, Inc. v. Badbusinessbureau.com, LLC*,
   No. 3:02-CV-2727, 2004 WL 833595 (N.D. Tex. Apr. 19, 2004) ........... 14, 16, 18, 19

*Murray v. Cable Nat'l Broad. Co.*,
   86 F.3d 858 (9th Cir. 1996) .............................................................................. 19

*Naked Cowboy v. CBS*,
   844 F. Supp. 2d 510 (S.D.N.Y. 2012) ................................................................. 19

*New Kids on the Block v. News America Publishing, Inc.,*
  971 F.2d 302 (9th Cir. 1992) ................................................................ 8

*Nordstrom, Inc. v. NoMoreRack Retail Grp., Inc.,*
  No. C12-1853-RSM, 2013 WL 1196948 (W.D. Wash. Mar. 25, 2013) .................... 15

*Oreck Corp. v. U.S. Floor Sys., Inc.,*
  803 F.2d 166 (5th Cir. 1986) ........................................................ *passim*

*Pebble Beach Co. v. Tour 18 I Ltd.,*
  155 F.3d 526 (5th Cir. 1998) .............................................................. 14

*Scott Fetzer Co. v. House of Vacuums, Inc.,*
  381 F.3d 477 (5th Cir. 2004) .............................................................. 18

*Sheppard v. Tex. Dep't of Transp.,*
  158 F.R.D. 592 (E.D. Tex. 1994) ...................................................... 2, 13

*Sport Supply Grp., Inc. v. Columbia Cas. Co.,*
  335 F.3d 453 (5th Cir. 2003) .............................................................. 8

*Sugar Busters LLC v. Brennan,*
  177 F.3d 258 (5th Cir. 1999) ......................................................... 19, 20

*Sun-Fun Prods, Inc. v. Suntan Res. & Dev. Inc.,*
  656 F.2d 186 (5th Cir. 1981) .............................................................. 17

*Sun-Maid Raisin Growers of Cal. v. Sunaid Foods Prods., Inc.,*
  356 F.2d 467 (5th Cir. 1966) ...................................................... 9, 15, 17

*Sweet v. City of Chicago,*
  953 F. Supp. 225 (N.D. Ill. 1996) ......................................................... 19

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.,*
  532 U.S. 23 (2001) ......................................................................... 14

*United States ex rel. Willard v. Humana Health Plan of Tex., Inc.,*
  336 F.3d 375 (5th Cir. 2003) .............................................................. 10

*United States v. Brown,*
  636 F. Supp. 2d 1116 (D. Nev. 2009) ................................................. 11, 13

*United States v. Feng Ling Liu,*
  69 F. Supp. 3d 374 (S.D.N.Y. 2014) ....................................................... 15

*Vision Center v. Opticks, Inc.,*
  596 F.2d 111 (5th Cir. 1979) .............................................................. 21

## Statutes

15 U.S.C. § 1064 ............................................................................ 21

15 U.S.C. § 1065 ............................................................................ 21

15 U.S.C. § 1114(1) ...................................................................... 5, 7

15 U.S.C. § 1115(b)(4) ................................................................................ 19

15 U.S.C. § 1119................................................................................................ 21

15 U.S.C. § 1125(a)(1)(A) .............................................................................. 7

15 U.S.C. § 1127................................................................................................ 8

## Rules

Fed. R. Civ. P. 12(b)(6)................................................................ 1, 13, 20, 23

Fed. R. Evid. 201(b) ...................................................................................... 11

Fed. R. Evid. 201(c) ....................................................................................... 11

## Other Authorities

H.R. Conf. Rep. No. 104-369 (1995) .......................................................... 22

J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* §
32:121.60 (4th ed. 2014) ............................................................................ 8

J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* §
32:121.75 (4th ed. 2014)........................................................................ 8, 19

Michael W. Carroll, *Pinterest & Copyright's Safe Harbors for Internet Providers*,
68 U. Miami L. Rev. 421 (2014)............................................................. 20

Restatement (Third) of Unfair Competition § 21 (1995)........................... 17

S.L. Dogan & M.A. Lemley, *Grounding Trademark Law Through Trademark
Use*, 92 Iowa L. Rev. 1669 (2007)....................................................... 9, 13

# STATEMENT OF ISSUE

1.  Does the first amended complaint fail to state a plausible claim for relief under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)?

## **INTRODUCTION**

Under Supreme Court law, a complaint must state a "plausible" claim—not merely a possible or conceivable one—to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint here fails that test.

The complaint accuses Defendant Hobby Lobby Stores, Inc. of trademark infringement. But it makes no plausible claim of likely consumer confusion, the test for infringement. The complaint's sole allegation stems from a poster displayed inside certain Hobby Lobby stores. That poster invited customers to "GET PINSPIRED" by visiting Hobby Lobby's page on the popular social-media website Pinterest ("get inspired" plus "Pinterest" equals "GET PINSPIRED"). As the complaint shows, the poster contained several prominent references to Pinterest, including the URL to the Hobby Lobby Pinterest page. Today's consumers see this type of social-media marketing all the time. Yet the complaint supposes that, rather than understand the poster's message, consumers were likely confused into perceiving an affiliation with the plaintiff's business—a "do it yourself" workshop in Lubbock, Texas called PINSPIRED (which has no affiliation with Pinterest). That is not plausible.

"Anemic" lawsuits do not warrant discovery. *Twombly*, 550 U.S. at 559. Allowing this case to proceed would waste valuable time and resources—including those of the Court and its staff—on a "groundless" claim. *Id.* at 558. Faced with similarly implausible trademark-infringement claims, other courts have not hesitated to dismiss under Federal Rule of Civil Procedure 12(b)(6). Hobby Lobby asks this Court to do the same.

## FACTS[1]

Plaintiff KS Cayton, LLC owns and operates a "do it yourself arts and crafts workshop" in Lubbock, Texas. Dkt. 11 (First Amended Complaint) ¶¶ 13, 15. The workshop operates under the name PINSPIRED, for which KS Cayton owns a federal trademark registration. *Id.* The registration covers the following services in International Class 41 (education and entertainment services):

> A full service do it yourself arts and crafts workshop which provides the needed supplies, tools, instructions, and staff assistance for customers to construct, paint, and finish a variety of projects including furniture construction, furniture refinishing, furniture repurposing, construction of home décor, room makeovers, handmade gifts, custom embroidery, custom sewing projects and decorating consultations.

*Id.* Exh. 1 (registration certificate for U.S. Reg. No. 4,493,620).

Defendant Hobby Lobby Stores, Inc. owns and operates a chain of several hundred retail stores. *Id.* ¶ 22. Hobby Lobby stores carry a variety of products for hobbyists, including arts-and-crafts products. *Id.*

At issue here is a poster displayed inside certain Hobby Lobby stores. The poster invited customers to visit Hobby Lobby's page on the popular social-media website Pinterest[2] (http://www.pinterest.com/hobbylobby). The complaint's Exhibit 5, for example, shows the disputed poster as it appeared inside an Arizona store:

---

[1] On a motion to dismiss, the Court accepts as true the complaint's well-pleaded facts. *Sheppard v. Tex. Dep't of Transp.*, 158 F.R.D. 592, 595 (E.D. Tex. 1994).

[2] Pinterest is a "[c]ommonly used" social-media website akin to Facebook, Twitter, and Instagram. *Bell v. Itawamba County School Bd.*, 774 F.3d 280, 306 (5th Cir. 2014) (Barksdale, J., concurring in part and dissenting in part). It "allows its users to 'pin' what interests them onto virtual bulletin boards for others to see." *Havel v. Honda Motor Europe Ltd.*, No. H-13-1291, 2014 WL 4967229, at *3 (S.D. Tex. Sept. 30, 2014).



*Id.* ¶ 23 & Exh. 5. The complaint's remaining exhibits show the same poster (in both vertical and horizontal layouts) at other Hobby Lobby stores. *Id.* Exhs. 3-4, 6-7.[3]

In January 2015, KS Cayton sent a demand letter to Hobby Lobby regarding this poster. *Id.* Exh. 2. The demand letter acknowledged that Hobby Lobby was using the poster "***to market its Pinterest page and direct customers to pinterest.com/hobbylobby***." *Id.* (emphasis added). Despite this acknowledgment, however, KS Cayton claimed that the poster would likely confuse consumers into perceiving an affiliation between Hobby Lobby and KS Cayton's workshop in Lubbock. *See id.*

KS Cayton demanded that Hobby Lobby cease its use. *Id.* KS Cayton also demanded a "financial accounting of all profits derived" from Hobby Lobby's use, though KS Cayton did not explain its theory of how Hobby Lobby could have profited. *Id.* After making these demands, KS Cayton threatened this lawsuit but then immediately suggested "potential licensing as a potential resolution." *Id.*

Hobby Lobby contacted KS Cayton in response to the demand letter,[4] but the parties could not reach a resolution. KS Cayton then filed its original complaint on

---

[3] The complaint's exhibits are "part of [the complaint] for all purposes." Fed. R. Civ. P. 10(c). Courts consider the complaint's exhibits when analyzing a motion to dismiss. *Financial Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006); *Sheppard*, 158 F.R.D. at 595.

[4] Because KS Cayton declined to include the parties' full correspondence as an exhibit to the complaint, Hobby Lobby has not attached that correspondence here and does not rely on it in seeking dismissal. *See Financial Acquisition*, 440 F.3d at 286.

July 6, 2015. Dkt. 1. Hobby Lobby moved to dismiss for failure to state a plausible claim. Dkt. 6. KS Cayton responded by filing a first amended complaint (Dkt. 11)[5] and an opposition to Hobby Lobby's motion (Dkt. 7-1).  In its opposition, KS Cayton argued that its filing of the first amended complaint had mooted Hobby Lobby's original motion to dismiss (thus necessitating this amended motion to dismiss). *See* Dkt. 7-1 at 1-2.

The first amended complaint alleges one count of trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), and one count of unfair competition under Section 43 of the Lanham Act, 15 U.S.C. § 1125(a). Complaint ¶¶ 12, 34. Among other things, it seeks a permanent injunction, treble damages for allegedly "willful" infringement, and attorney's fees for the allegedly "exceptional" nature of this case. *Id.* p.7. The complaint does not mention Pinterest, despite KS Cayton's prior written acknowledgment that the "GET PINSPIRED" poster was about Pinterest. *See id.* Exh. 2.

## ARGUMENT

This case boils down to a simple fact: Hobby Lobby's "GET PINSPIRED" poster had nothing to do with KS Cayton's business. The poster was an invitation to visit Hobby Lobby's page on Pinterest, the popular social-media website with whom KS Cayton has no affiliation. Hamstrung by this fact, the complaint avoids the issue by refusing to mention Pinterest. But the complaint's exhibits tell the real story and

---

[5] Except where otherwise noted, this motion uses "complaint" to mean the first amended complaint.

show the poster's clear, Pinterest-themed message—a message KS Cayton acknowledged before it turned around and filed this lawsuit.

Courts rely on their "judicial experience and common sense" in deciding motions to dismiss. *Iqbal*, 556 U.S. at 678. Here, experience and common sense reveal no plausible claim for trademark infringement or unfair competition. Rather, they reveal an opportunistic plaintiff's attempt to leverage a completely lawful poster into a settlement payday. KS Cayton's implausible claims fail to "unlock the doors of discovery." Id. at 678-79. Dismissal is warranted.

## I.    *Twombly* and *Iqbal* require a "plausible" claim for relief.

To survive a motion to dismiss, a complaint must take the plaintiff's claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. This requires more than a sheer possibility of unlawful conduct. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557). The complaint cannot rely solely on facts "merely consistent with" the defendant's liability. *Id.* Rather, it must allege facts from which the Court could reasonably infer liability. *Id.* This inquiry is "context-specific" and requires the Court to "draw on its judicial experience and common sense." *Id.* at 679.

The plausibility requirement creates two distinct thresholds a complaint must cross. *See Twombly*, 550 U.S. at 557 n.5. First, the complaint must cross a threshold from conclusory to factual. *Id.* This means the complaint cannot rely on mere "labels and conclusions," nor on a "formulaic recitation of the elements." *Id.* at 555. Although courts accept a complaint's *factual* allegations as true on a motion to dismiss, they do not accept its *legal* conclusions as true, even where those legal conclusions are couched as factual allegations. *Iqbal*, 556 U.S. at 678.

Second, the complaint must cross a threshold from factually neutral to factually suggestive. *Twombly*, 550 U.S. at 557 n.5. This means a plaintiff cannot rely on allegations that, however particularized they may be, do not plausibly "suggest[] . . . illegal conduct." *Iqbal*, 556 U.S. at 696 (citing *Twombly*, 550 U.S. at 564 n.8). In other words, even a complaint based on specific factual allegations can be implausible. *See Twombly*, 550 U.S. at 569 n.14 ("Here, our concern is not that the allegations in the complaint were insufficiently particularized; rather, the complaint warranted dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible." (citation and quotation omitted)).

## II.   KS Cayton's claims are not plausible.

The complaint fails *in toto* to allege plausible claims. *See id.* KS Cayton's theory of liability supposes that consumers who viewed a poster unmistakably about Pinterest would instead *probably* confuse an association with a workshop in Lubbock. By filing a lawsuit on that premise, KS Cayton effectively asks this Court to cast aside its "judicial experience and common sense." *Iqbal*, 556 at 679. The Court should decline that invitation.

### A.   The complaint fails to plausibly allege a likelihood of confusion.

The complaint's first deficiency goes to the heart of trademark law. The test for both trademark infringement and unfair competition is likelihood of confusion— i.e., whether the defendant's use "was likely to create confusion in the minds of potential buyers as to the source, affiliation, or sponsorship" of the defendant's goods. *Oreck Corp. v. U.S. Floor Sys., Inc.*, 803 F.2d 166, 170 (5th Cir. 1986); *see* 15 U.S.C. §§ 1114(1), 1125(a)(1)(A). This test requires ***probable*** confusion, not merely possible

confusion. *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 193 (5th Cir. 1998). Thus, to survive under *Twombly* and *Iqbal*, a complaint must allege facts showing a "***plausible likelihood*** of confusion." *Baker v. DeShong*, --- F. Supp. 3d ----, 2014 WL 8104131, at *1 (N.D. Tex. 2014) (emphasis added); *accord* 6 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 32:121.60 (4th ed. 2014).

A "far-fetched" allegation of likely confusion is not enough. 6 McCarthy, *supra*, § 32:121.60 (treatise section attached as Exhibit 1). "If the complaint alleges a factual scenario in which probable confusion is clearly implausible, then an immediate dismissal" is appropriate under *Twombly* and *Iqbal*. *Id.* Since the Supreme Court decided those two cases, a "growing number of courts" have dismissed complaints that failed to plausibly allege a likelihood of confusion. *Id.* § 32:121.75 & n.2 (treatise section attached as Exhibit 2). Those decisions, many of which are discussed below, help guide the outcome here.

1.  **The complaint does not plausibly allege—and indeed, negates—that Hobby Lobby used "GET PINSPIRED" as a trademark.**

The purpose of a trademark is to identify source so consumers may distinguish one producer's goods from another's. *Sport Supply Grp., Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 460 (5th Cir. 2003); *see* 15 U.S.C. § 1127 (definition of "trademark"). Trademark laws "simply do not apply" to a non-trademark use—i.e., a use that does not indicate the source, affiliation, or sponsorship of the defendant's goods. *New Kids on the Block v. News America Publ'g, Inc.,* 971 F.2d 302, 307 (9th Cir. 1992); *accord Oreck*, 803 F.2d at 170 (likelihood of confusion must exist as to "source, sponsorship, or affiliation"). This "trademark-use" doctrine provides an "essential tool" for

"identifying classes of behavior that cannot constitute infringement." S.L. Dogan & M.A. Lemley, *Grounding Trademark Law Through Trademark Use*, 92 Iowa L. Rev. 1669, 1674, 1701 (2007).

On a motion to dismiss, the trademark-use doctrine creates a "preliminary question": whether the complaint plausibly alleges that the defendant used the challenged mark ***as a trademark***. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 610-11 (6th Cir. 2009). If not, a likelihood of confusion cannot plausibly exist and the complaint should be dismissed. *See, e.g.*, *Eastland Music Group, LLC v. Lionsgate Entm't, Inc.*, 707 F.3d 869, 872 (7th Cir. 2013); *Hensley*, 579 F.3d at 610-11, 613-14; *Dow Corning Corp. v. Jie Xiao*, No. 11-10008-BC, 2011 WL 2015517, at *6-7 (E.D. Mich. May 20, 2011).

KS Cayton's complaint falters on this preliminary question. Far from plausibly alleging that Hobby Lobby used the phrase "GET PINSPIRED" as a source-identifying trademark, the complaint shows otherwise. The complaint's exhibits show that Hobby Lobby's "GET PINSPIRED" poster conveyed a specific context and a specific message. *See Elvis Presley*, 141 F.3d at 197 (emphasizing the importance of the "context of the presentation of a mark"); *Sun-Maid Raisin Growers of Cal. v. Sunaid Foods Prods., Inc.*, 356 F.2d 467, 469 (5th Cir. 1966) (holding that a mark "cannot be isolated" from its marketplace context). That message, of course, was all about the social-media website Pinterest, with whom KS Cayton has no affiliation. The poster made five separate references to Pinterest (not including the phrase "GET PINSPIRED" itself, which would make six):

### Pinterest References on the "GET PINSPIRED" Poster



#1 – "Save it to your board" (meaning your Pinterest board)[6]

#2 – URL for the Hobby Lobby Pinterest page (pinterest.com/ hobbylobby)

#3 – Pinterest logo

#4 – Screenshot of the Pinterest iPhone app

#5 – Pinterest logo (again)[7]

---

[6] As noted, Pinterest is a "virtual bulletin board." *Havel*, 2014 WL 4967229, at *3

[7] Regarding annotations #2 through #5 above, the Court may consider—in addition to the complaint and its exhibits—"matters of which judicial notice may be taken." *United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 379 (5th Cir. 2003). To that end, Hobby Lobby asks the Court to take judicial notice of three basic, indisputable facts: (1) pinterest.com/hobbylobby is the URL of Hobby Lobby's page on Pinterest; (2) Pinterest has an iPhone app; and (3) the red "P" logo displayed on the poster above is Pinterest's logo. *See Hobby Lobby on Pinterest*,

*See* Complaint Exh. 5; *see also id.* Exhs. 3-4, 6-7 (same poster in both horizontal and vertical layouts).

These references to Pinterest provide important context. *See Elvis Presley*, 141 F.3d at 197; *Sun-Maid*, 356 F.2d at 469. Within that context, the phrase "GET PINSPIRED" did not indicate the source, sponsorship, or affiliation of Hobby Lobby's goods. Rather, it was a play on words inviting customers to visit the Hobby Lobby page on Pinterest ("get inspired" plus "Pinterest" equals "GET PINSPIRED").

This play on words made perfect sense given the nature of Pinterest's service. Pinterest is a "virtual bulletin board[]" on which users can "'pin' what interests them . . . for others to see." *Havel*, 2014 WL 4967229, at *3. Also, Pinterest is extremely

---

http://www.pinterest.com/HobbyLobby (last visited Oct. 1, 2015); *Pinterest on the App Store*, https://itunes.apple.com/us/app/pinterest/id429047995?mt=8 (last visited Oct. 1, 2015); Pinterest, *Brand Guidelines: Our Badge*, https://business.pinterest.com/en/brand-guidelines (last visited Oct. 1, 2015). All three of these facts are "not subject to reasonable dispute." Fed. R. Evid. 201(b). Further, all three facts can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id.* 201(b)(2). These sources include: Pinterest's official website (linked above) for the first and third facts, Apple's official website (linked above) for the second fact, and any number of other reliable third-party sources. Indeed, courts regularly take judicial notice from reliable websites. *E.g.*, *Ceglia v. Zuckerberg*, No. 10-CV-00569A(F), 2012 WL 503810, at *11 & n.10 (W.D.N.Y. Feb. 14, 2012) (*Wall Street Journal* website); *Fjeta v. Facebook, Inc.*, 841 F. Supp. 829, 834 (S.D.N.Y. 2012) (Facebook.com); *United States v. Brown*, 636 F. Supp. 2d 1116, 1124 n.1 (D. Nev. 2009) (Google Maps).

In its response to the original motion to dismiss, KS Cayton did not dispute the three facts above (nor could anyone credibly do so). Still, KS Cayton attempted to oppose judicial notice. Dkt. 7-1 at 15. That attempt underscores the implausibility of KS Cayton's case. If KS Cayton's claims were plausible, it would not resort to asking this Court to disregard "any facts related to Pinterest." *Id.* This Court should take judicial notice of the three indisputable facts above, plus any other facts it feels are relevant and properly subject to judicial notice. *See* Fed. R. Evid. 201(b)(2), 201(c)(1) (court may take judicial notice *sua sponte*).

popular. *See Bell*, 774 F.3d at 306 (Barksdale, J., concurring in part and dissenting in part) (noting that Pinterest is "[c]ommonly used" and comparing it to Facebook, Twitter, and Instagram); *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, --- F. Supp. 3d ----, 2015 WL 1499449, at *4 (S.D.N.Y. 2015) (calling Pinterest an "arbiter[] of popular culture"). Thus, it is easy to see why Hobby Lobby would invite its customers to draw inspiration from Pinterest (i.e., to "GET PINSPIRED").

Adding even more context to the poster, the name HOBBY LOBBY appeared in two places—in the URL for Hobby Lobby's Pinterest page (see annotation #2 above) and at the top of the iPhone screen (#4). *That*—not "GET PINSPIRED"—was the poster's obvious indication of source, especially given that the poster appeared *inside* Hobby Lobby stores. *See id.* ¶ 23 & Exhs. 3-7; *cf. Greenpoint Financial Corp. v. Sperry & Hutchinson Co.*, 116 F. Supp. 2d 405, 411 (S.D.N.Y. 2000) (displaying a company name along with the challenged mark reduces any risk of confusion).

In light of all this context, the phrase "GET PINSPIRED" was a mere "ornamental" use—i.e., a decorative use devoid of trademark significance. *See, e.g.*, *Go Pro Ltd. v. River Graphics, Inc.*, No. CIVA01CV600, 2006 WL 898147, at *4 (D. Colo. 2006) (phrase "Here Fishy, Fishy" on clothing was merely ornamental, not a trademark use); *In re F.C.F. Inc.*, 30 U.S.P.Q.2d 1825, 1994 WL 262248, at *1 (T.T.A.B. 1994) (same; picture of roses on cosmetics); *In re Astro-Gods, Inc.*, 223 U.S.P.Q. 621, 1984 WL 63582, at *3 (T.T.A.B. 1984) (same; phrase "ASTRO GODS" on t-shirts). The poster's emphasis on Pinterest—not to mention Pinterest's sheer cultural prominence—make it implausible that consumers likely perceived "GET

PINSPIRED" as "anything other than part of the thematic whole of [the poster's] ornamentation." *Astro-Gods*, 1984 WL 63582, at *3.

Remarkably, before filing this lawsuit, KS Cayton acknowledged the poster's Pinterest-themed message. *See* Complaint Exh. 2. KS Cayton now quietly works to distance itself from that concession. Its complaint neglects to mention Pinterest and neglects to explain that KS Cayton selected the name PINSPIRED despite having no affiliation with Pinterest.

In any event, KS Cayton cannot wish away facts shown by its own exhibits. *See Sheppard*, 158 F.R.D. at 595 (explaining that this Court will grant dismissal if an exhibit to the complaint "contradicts an assertion made in the complaint and eliminates any possible claim for relief"). The exhibits negate any plausible allegation that Hobby Lobby used "GET PINSPIRED" as a trademark. Dismissal is therefore appropriate. *See, e.g.*, *Eastland*, 707 F.3d at 872; *Hensley*, 579 F.3d at 610-11; *Dow Corning*, 2011 WL 2015517, at *6-7.[8]

---

[8] Departing from the weight of authority, one court has declined to require a threshold showing of "trademark use" at the Rule 12(b)(6) stage. *See Kelly-Brown v. Winfrey*, 717 F.3d 295, 307-08 (2d Cir. 2013). Hobby Lobby submits that *Kelly-Brown* is wrong and inconsistent with Fifth Circuit law. The trademark-use requirement exists implicitly within the likelihood-of-confusion test, which mandates confusion as to "source, affiliation, or sponsorship." *Oreck*, 803 F.2d at 170. A complaint that fails to plausibly allege trademark use necessarily fails to allege a plausible likelihood of confusion. *See* Dogan & Lemley, *supra*, at 1682 ("Absent a suggestion of source or sponsorship, after all, it is hard to argue that the defendant is creating *confusion* as to either."). Courts have historically required trademark use, and *Kelly-Brown* reflects a "radical departure" from that history. *See* Dogan & Lemley, *supra*, at 1670.

Regardless, if this Court does not agree that trademark use should be a threshold requirement on a motion to dismiss, KS Cayton's complaint *still* fails to allege a plausible claim for relief. *See infra* Parts II.A.2, II.B.

**2.    Even setting aside the trademark-use requirement, the complaint gives no plausible reason to believe that consumers would likely be confused.**

Assuming *arguendo* that trademark use is not a firm requirement on a motion to dismiss, this case still warrants dismissal. The complaint alleges no facts from which this Court, drawing on its "judicial experience and common sense," could plausibly infer a likelihood of confusion.  *Iqbal*, 556 U.S. at 678.

The Fifth Circuit has outlined eight factors courts often use to analyze likelihood of confusion. *Oreck*, 803 F.2d at 170; *see infra* pp. 16-18 (listing and applying these factors). However, the eight factors are not exclusive, and courts "should consider other relevant factors." *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 546 (5th Cir. 1998), *abrogated on other grounds by TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23 (2001). Especially on a motion to dismiss, the eight traditional factors may be "of little assistance." *MCW, Inc. v. Badbusinessbureau.com, LLC*, No. 3:02-CV-2727, 2004 WL 833595, at *16 (N.D. Tex. Apr. 19, 2004) (granting dismissal without addressing the eight factors because the complaint offered "no evidence" of likely confusion).

Here, the most relevant factor—and the one that should be dispositive—is outside the traditional eight. *Cf. id.* It is the elephant in the room: Hobby Lobby's "GET PINSPIRED" poster had an unmistakable message, and that message had nothing to do with KS Cayton's business. The poster was about Pinterest, as KS Cayton itself has conceded. *See* Complaint Exh. 2. The complaint offers no plausible reason to believe that, rather than understand the message, consumers were likely confused into perceiving a connection between Hobby Lobby and KS Cayton.

Again, consider the marketplace context. *See Elvis Presley*, 141 F.3d at 197; *Sun-Maid*, 356 F.2d at 469; *see also Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.*, 815 F.2d 500, 504 (8th Cir. 1987) ("A realistic evaluation of consumer confusion must attempt to recreate the conditions in which buying decisions are made . . . ."). The relevant consumer is inside a Hobby Lobby store, where the poster was displayed. *See* Complaint ¶ 23. He or she sees the poster, which (1) prominently featured the marks of a very popular social-media website (Pinterest); (2) next to those Pinterest marks, contained the play on words "GET PINSPIRED"; and (3) twice contained the name HOBBY LOBBY. *See id.* Exhs. 3-7; *see also supra* pp. 3, 10. According to the complaint, this consumer would *probably*—not just possibly or conceivably—confuse an association with KS Cayton's workshop in Lubbock.

"[J]udicial experience and common sense" should tell the Court that this theory is not plausible. *Iqbal*, 556 U.S. at 678. Trademark law asks whether "ordinary purchasers, buying with ordinary caution, are likely to be misled." *McLean v. Fleming*, 96 U.S. 245 (1877). Today's ordinary consumer can barely turn a corner without seeing advertisements tied to social media. *See, e.g.*, *Nordstrom, Inc. v. NoMoreRack Retail Grp., Inc.*, No. C12-1853-RSM, 2013 WL 1196948, at *7 n.3 (W.D. Wash. Mar. 25, 2013) (noting that social-media marketing is "routine"—88% of medium and large companies used social media for marketing in 2012). Indeed, "the embrace of social media is ubiquitous." *United States v. Feng Ling Liu*, 69 F. Supp. 3d 374, 386 (S.D.N.Y. 2014).

The complaint sweeps all this aside. It imagines that Hobby Lobby used "GET PINSPIRED" not as an invitation to a popular social-media website, but instead to "mislead[]" its customers into perceiving an affiliation with a workshop in Lubbock. *See* Complaint ¶ 27. It imagines that Hobby Lobby did so "intention[ally]," supposedly with the goal of "trading on [the] reputation and good will" of that Lubbock workshop. *Id.* And it imagines that customers likely suffered this confusion, despite Pinterest's cultural prominence and the poster's numerous explicit references to Pinterest. *See id.* ¶ 26. None of that is plausible under *Twombly* and *Iqbal*.[9]

This fundamental implausibility gives the Court reason to dismiss without reaching the Fifth Circuit's eight traditional likelihood-of-confusion factors. *See, e.g.*, *MCW*, 2004 WL 833595, at *16. But if this Court also wants to examine those factors, *see Oreck*, 803 F.2d at 170 (outlining the factors), they do not make the complaint plausible:

1. *Strength of the plaintiff's mark*: The complaint alleges no facts plausibly showing the strength of the PINSPIRED mark. The complaint alleges that the mark is federally registered, but that does not make the mark strong. *See Oreck*, 803 F.2d at 171. The complaint makes no allegation of inherent strength, and its only allegation of commercial strength is a threadbare statement that KS Cayton has "promot[ed]" and "market[ed]" its services. Complaint ¶ 18; *see Dallas Cowboys Football Club, Ltd. v. America's Team Props., Inc.*, 616 F. Supp. 2d 622, 637 (N.D. Tex. 2009) (explaining that inherent strength and commercial strength are the two components of this factor). Unlike in cases finding commercial strength, KS Cayton does not allege the nature, extent, or duration of these supposed marketing efforts. *See, e.g., Sun-Fun Prods, Inc. v. Suntan Res. & Dev. Inc.*, 656 F.2d 186, 190-91 (5th Cir. 1981)

---

[9] Of course, it does not matter whether the poster hypothetically created any likelihood of confusion between Hobby Lobby and *Pinterest*. Pinterest is not the plaintiff in this lawsuit. KS Cayton has no standing to assert a likelihood of confusion on behalf of Pinterest.

(finding commercial strength where the evidence showed that the plaintiff had spent "at least seven or eight years" marketing itself through "national media advertising, brochures, and various other promotional techniques").

2. *Similarity of the marks*: KS Cayton owns the mark PINSPIRED, while Hobby Lobby used the phrase "GET PINSPIRED." That one-word difference matters because, as discussed, "GET PINSPIRED" is a play on words referring only to Pinterest, not to KS Cayton. The complaint incorrectly says that Hobby Lobby is using the "identical" mark PINSPIRED, Complaint ¶ 21, but the complaint's own exhibits betray that assertion, *see id.* Exhs. 3-7. In addition, the poster's inclusion of the name HOBBY LOBBY (twice) reduces any likelihood of confusion under this factor. *See Greenpoint*, 116 F. Supp. 2d at 411. Finally, because the complaint does not allege how KS Cayton uses PINSPIRED in the marketplace, this factor carries little weight. *See* Restatement (Third) of Unfair Competition § 21 cmt. c (1995) ("[A]ny comparison should thus be based on the marks as they appear in the marketplace."); *accord Elvis Presley*, 141 F.3d at 197; *Sun-Maid*, 356 F.2d at 469.

3. *Similarity between the goods or services*: Other than flatly using the words "arts and crafts" to describe both parties' businesses, the complaint alleges no facts addressing this factor. The complaint does not allege that Hobby Lobby attached "GET PINSPIRED" to any particular goods. Also, while not dispositive, the parties' basic business models are different. KS Cayton's business is a "do it yourself" workshop, and its federal trademark registration extends only to services in International Class 41 (education and entertainment services). *Id.* ¶ 15 & Exh. 1. Hobby Lobby, in contrast, is a chain of retail stores. *Id.* ¶ 22.

4. *Identity of retail outlets and purchasers*: The complaint alleges no facts addressing this factor.

5. *Similarity of advertising media used*: Other than the unremarkable fact that each party has physical locations (one location, in KS Cayton's case) and a website, *id.* ¶¶ 17, 22, the complaint alleges no facts addressing this factor.

6. *Defendant's intent*: The complaint alleges no facts plausibly showing that Hobby Lobby acted in bad faith. *Twombly* and *Iqbal* give no weight to the complaint's "formulaic" and "conclusory" allegation of bad faith. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555; *see also* Complaint ¶ 27. Further, the allegation that Hobby Lobby continued to use the posters after receiving KS Cayton's demand letter, Complaint ¶ 28, is

"insufficient to support an allegation of bad faith as a matter of law." *E.g.*, *Dessert Beauty, Inc. v. Fox*, 568 F. Supp. 2d 416, 427 (S.D.N.Y. 2008) (quotation omitted). Finally, KS Cayton has conceded that Hobby Lobby did not act in bad faith. *See* Complaint Exh. 2 (conceding that the "GET PINSPIRED" poster was intended "to market [Hobby Lobby's] Pinterest page").

7. *Evidence of actual confusion*: The complaint claims that "several" unidentified individuals contacted KS Cayton "inquiring as to its affiliation with [Hobby Lobby]." *Id.* ¶ 24. It offers no further detail to support this bare statement. Tellingly, KS Cayton's original complaint did not make this allegation. *See* Dkt. 1. KS Cayton added the allegation only after Hobby Lobby filed its original motion to dismiss, which pointed out the original complaint's failure to allege any actual confusion. KS Cayton gives no reason for its failure to include this allegation in the original complaint. *Cf. Horton v. Vinson*, No. 1:14-CV-192, 2015 WL 4774276, at *29 (N.D. W. Va. Aug. 12, 2015) (granting motion to dismiss and viewing with skepticism the plaintiff's attempt to "add new and additional facts" that, if true, "should have been part of his previous Complaint[]").

8. *Degree of care exercised by consumers*: The complaint alleges no facts addressing this factor.

In appropriate cases, courts may rule on confusion as a matter of law. *See, e.g.*, *Scott Fetzer Co. v. House of Vacuums, Inc.*, 381 F.3d 477, 485-89 (5th Cir. 2004) (affirming grant of summary judgment); *MCW*, 2004 WL 833595, at *15-16 (granting Rule 12(b)(6) dismissal). This is one of those cases. An implausible complaint like KS Cayton's cannot survive a motion to dismiss, much less reach a trial. *See MCW*, 2004 WL 833595, at *15-16; *see also Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.

If a plaintiff could survive dismissal by simply arguing that confusion is a fact question, *Twombly* and *Iqbal* would have no teeth in trademark cases. Unsurprisingly, courts have not allowed that result. Many courts—including courts in this circuit—have dismissed trademark lawsuits because "the allegations of a

likelihood of confusion [were] implausible in view of the facts alleged." 6 McCarthy, *supra*, § 32:121.75.[10] So too here.

**B.   The complaint conclusively establishes a "fair use" defense.**

Beyond the complaint's failure to plausibly allege a likelihood of confusion, this case warrants dismissal for another reason. The complaint conclusively establishes that Hobby Lobby's use of "GET PINSPIRED" was a statutory fair use under Section 33(b)(4) of the Lanham Act.

Section 33(b)(4) creates an affirmative defense whenever a defendant uses a plaintiff's mark "otherwise than as a mark" in a manner "descriptive of and used fairly and in good faith only to describe the [defendant's] goods or services." 15 U.S.C. § 1115(b)(4). The defense thus has three elements: (1) the mark at issue is descriptive; (2) the defendant used the mark only in a descriptive sense, not in a trademark sense; and (3) the defendant did so fairly and in good faith. *See Sugar Busters LLC v. Brennan*, 177 F.3d 258, 270-71 (5th Cir. 1999).

---

[10] *E.g.*, *Eastland*, 707 F.3d at 872; *Hensley*, 579 F.3d at 610-11, 613-14; *Murray v. Cable Nat'l Broad. Co.*, 86 F.3d 858, 861 (9th Cir. 1996); *Faulkner Literary Rights, LLC v. Sony Pictures Classics Inc.*, 953 F. Supp. 2d 701, 712 (N.D. Miss. 2013); *Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 947 F. Supp. 2d 922, 930-31 (N.D. Ind. 2013); *Naked Cowboy v. CBS*, 844 F. Supp. 2d 510, 515-16 (S.D.N.Y. 2012); *Louis Vuitton Malletier S.A. v. Warner Bros. Entm't*, 868 F. Supp. 2d 172, 182-84 (S.D.N.Y. 2012); *Dow Corning*, 2011 WL 2015517, at *7-9; *Architectural Mailboxes, LLC v. Epoch Design, LLC*, No. 10cv974, 2011 WL 1630809, at *3-4 (S.D. Cal. Apr. 28, 2011); *Marvel Enters., Inc. v. NCSoft Corp.*, No. CV 04-9253, 2005 WL 878090, at *4 (C.D. Cal. Mar. 9, 2005); *MCW*, 2004 WL 833595, at *15-16; *Sweet v. City of Chicago*, 953 F. Supp. 225, 231-32 (N.D. Ill. 1996).

The fair-use defense does not require disproving a likelihood of confusion. *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 118-119 (2004). Rather, fair use tolerates some possibility of confusion because a plaintiff "accept[s]" that risk when it decides to use a descriptive term as a mark. *Id.* at 122 (quotation omitted).[11]

In a normal case, the defendant will establish fair use by offering evidence to prove the defense. But that usual procedure becomes unnecessary where, as here, the defense is established "on the face of the pleadings." *Kansa Reinsurance Co., Ltd. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1365 (5th Cir. 1994) (affirming Rule 12(b)(6) dismissal based on an affirmative defense). Indeed, courts have granted dismissal where the complaint and its exhibits showed fair use. *E.g.*, *Hensley*, 579 F.3d at 612-13; *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 11 F.3d 1460, 1467 (9th Cir. 1993); *Architectural Mailboxes*, 2011 WL 1630809, at *3-4.

Here, KS Cayton's complaint and its exhibits establish the three elements of fair use. *See Sugar Busters*, 177 F.3d at 270-71. First, the PINSPIRED mark is descriptive. As used in the context of KS Cayton's services, the mark obviously derives from Pinterest's name. *Compare* Complaint Exh. 1 (describing KS Cayton's business as a "do it yourself arts and crafts workshop"), *with* Michael W. Carroll, *Pinterest & Copyright's Safe Harbors for Internet Providers*, 68 U. Miami L. Rev. 421, 435 (2014) (noting that "arts and crafts" is the second most popular category on Pinterest). The

---

[11] Hobby Lobby reiterates that KS Cayton has not plausibly alleged a likelihood of confusion. *See supra* Part II.A. The fair-use defense and its "tolerance" of confusion become relevant only if the Court disagrees with Hobby Lobby on the first point.

mark thus describes exactly what KS Cayton wants its customers to do: become "pinspired" by arts and crafts projects displayed on Pinterest, and then use KS Cayton's workshop to do an arts and crafts project. *See Vision Center v. Opticks, Inc.*, 596 F.2d 111, 115 (5th Cir. 1979) ("A descriptive term identifies a characteristic or quality of an article or service.").[12]

Second, as explained above, Hobby Lobby has used the phrase "GET PINSPIRED" only in its descriptive sense, a play on words referring to Pinterest. Hobby Lobby has not used the phrase in a trademark sense—i.e., to identify KS Cayton as the source, sponsor, or affiliate of Hobby Lobby's goods. *See supra* Part II.A.1.

Third, Hobby Lobby has used the phrase fairly and in good faith. Before filing suit, KS Cayton conceded that Hobby Lobby used "GET PINSPIRED" to market its Pinterest page. Complaint Exh. 2. This concession contradicts the complaint's formulaic and conclusory allegations of bad faith, which fail under *Twombly* and *Iqbal* in any event. The poster itself likewise shows that Hobby Lobby used the phrase fairly and in good faith. *See id.* Exhs. 3-7.

In sum, because the complaint and its exhibits show fair use, this lawsuit should not proceed. *See, e.g.*, *Hensley*, 579 F.3d at 612-13; *Dual-Deck Video*, 11 F.3d

---

[12] KS Cayton's federal registration does not prevent the PINSPIRED mark from being descriptive, as the registration is not incontestable. *See* 15 U.S.C. § 1065 (incontestable status requires five years of continuous use from the date of registration). If this lawsuit proceeds, Hobby Lobby plans to counterclaim for cancelation of KS Cayton's registration. *See id.* §§ 1064, 1119.

at 1467; *Architectural Mailboxes*, 2011 WL 1630809, at *4; *see also Kansa*, 20 F.3d at

1365. The fair-use defense provides an independent basis for dismissal.

### III.   KS Cayton has no right to discovery.

When facing a motion to dismiss, plaintiffs have often asked courts to allow

some discovery. Even if the complaint is not plausible yet, the argument goes, it could

*become* plausible after discovery.

*Twombly* and *Iqbal* reject that argument. The right to discovery is not

absolute—the plaintiff must "unlock the doors of discovery" by filing a plausible

complaint in the first place. *Iqbal*, 556 U.S. at 678-79; *see Twombly*, 550 U.S. at 556.

*Twombly* and *Iqbal* thus mitigate one of litigation's harsh realities: the mere "threat

of discovery expense" can push "cost-conscious defendants to settle even anemic

cases." *Twombly*, 550 U.S. at 559; *see, e.g., Eastland*, 707 F.3d at 871 (affirming

dismissal of trademark-infringement complaint because the allegations were "too

implausible to support costly litigation").

The Supreme Court and Congress have long criticized the practice of "'filing

[a] lawsuit[] . . . with only [a] faint hope that the discovery process might lead

eventually to some plausible cause of action.'" *Dura Pharms., Inc. v. Broudo*, 544 U.S.

336, 347 (2005) (quoting H.R. Conf. Rep. No. 104-369, at 31 (1995), *reprinted in* 1995

U.S.C.C.A.N. 679, 730)). Dismissal is the antidote to that problem. It allows courts to

prevent "groundless" claims from "tak[ing] up the time of a number of other people,

with the right to do so representing an *in terrorem* increment of the settlement value,

rather than a reasonably founded hope that the [discovery] process will reveal

relevant evidence.'" *Twombly*, 550 U.S. at 558 (quoting *Dura*, 544 U.S. at 347).

These principles apply here. Hobby Lobby respectfully submits that KS Cayton did not file this lawsuit on a reasonable belief that discovery would uncover evidence of wrongdoing. Rather, KS Cayton filed it hoping to create an "*in terrorem* increment" (*id.*) in Hobby Lobby's willingness to pay a licensing fee. *See* Complaint Exh. 2 (threatening this lawsuit and then immediately suggesting licensing as a potential resolution). This lawsuit does not warrant discovery; it warrants dismissal.

## CONCLUSION

Hobby Lobby asks the Court to dismiss the complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6).

DATED: October 2, 2015

Respectfully submitted,

/s/ Travis R. Wimberly
Louis T. Pirkey
State Bar No. 16033000
Travis R. Wimberly
State Bar No. 24075292
Pirkey Barber PLLC
600 Congress Ave., Suite 2120
Austin, TX 78701
(512) 322-5200
(512) 322-5201 (fax)
lpirkey@pirkeybarber.com
twimberly@pirkeybarber.com

*Attorneys for Defendant Hobby Lobby Stores, Inc.*

## CERTIFICATE OF SERVICE

I certify that on October 2, 2015, I electronically filed this document with the Clerk of Court using the CM/ECF system, which will send notification of the filing to the following:

Charles Albert Moster
Moster Law Firm, PC
4920 South Loop 289
Suite 102
Lubbock, TX 79414
806-778-6486
866-302-7046 (fax)
charlesalbertmoster@gmail.com

/s/ Travis R. Wimberly
Travis R. Wimberly